## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CONCEPT VENTURES, LLC,                )
                                       )
                Plaintiff,             )
                                       )
v.                                     )
                                       )      Case No. CIV-21-00845-PRW
NAVIGATORS SPECIALTY                   )
INSURANCE COMPANY,                     )
                                       )
                Defendant.             )

### ORDER

Before the Court is Defendant Navigators Specialty Insurance Company's Motion for Summary Judgment (Dkt. 24), seeking summary judgment on whether Plaintiff Concept Ventures, LLC, timely filed suit. Plaintiff responded (Dkt. 25), and Defendant replied (Dkt. 26). For the reasons given below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

### *Background*

Plaintiff and Defendant entered into a property-insurance contract in July 2018. During the contract's term, five of Plaintiff's properties were allegedly damaged by hail on April 17, 2019. Plaintiff submitted a claim for the alleged damage, but Defendant denied the claim on June 5, 2020. Plaintiff later filed suit on August 2, 2021—more than two years after the alleged hail damage—alleging breach of contract and bad faith. The parties' insurance contract, however, contains the following provision: "[n]o [o]ne may bring a

1

legal action against us under this Coverage part unless . . . [t]he action is brought within 2 years after the damage on which the direct physical loss occurred."[1]

In March 2020, the Oklahoma Governor declared a state of emergency related to the COVID-19 pandemic. Days later, the Oklahoma Insurance Commissioner issued the first of a series of "bulletins" directing all property and casualty carriers providing coverage to Oklahoma residents to take certain measures related to the potential impact of COVID-19. The first bulletin, issued on March 20, 2020, stated that "until the state emergency is no longer in place," "[p]roperty and casualty carriers should extend their applicable grace period for nonpayment of premiums by an additional forty-five (45) days."[2] The second bulletin, issued on April 29, 2020, added that those carriers "shall suspend all claims reporting deadlines for the duration of the emergency declaration and extend *all policyholder rights or benefits related to deadlines* until 90 days after the state of emergency ends."[3] The final bulletin, issued on June 18, 2020, rescinded the prior bulletins, except that "[t]he term of extended grace periods [for nonpayment of premiums] . . . [and] [t]he term of extended claims reporting periods, afforded to insureds pursuant to the original bulletin, [would] be allowed to expire upon reaching the end of the extension."[4]

---

[1] Def.'s Mot. (Dkt. 24), Ex. 1, at 19.

[2] *Id.* at Ex. 4.

[3] *Id.* at Ex. 5 (emphasis added).

[4] *Id.* at Ex. 6.

The issues before the Court are (1) whether the Insurance Commissioner's bulletins extended the parties' contractual two-year limitations period and (2) whether Plaintiff's claims for breach of contract and bad faith are time-barred.

### *Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the factfinder.[5] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[6] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[7] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[8]

If the movant carries its initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

[5] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[8] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[9] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[10] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[11]

## *Discussion*

The Court will address whether the bulletins extended the parties' contractual two-year limitations period before turning to whether Plaintiff timely filed suit.

I.    *The bulletins did not extend the insurance contract's two-year limitations period.*

Though Defendant argues that the Insurance Commissioner lacked authority to extend the contractually set limitations period, the Court need not reach this argument. That is because even if the bulletins could extend the parties' two-year limitations period, the third bulletin rescinded the relevant portion of the prior bulletin. As explained above, the first bulletin extended the "applicable grace period for nonpayment of premiums by an

---

[9] Fed. R. Civ. P. 56(c)(1). *See Celotex Corp.*, 477 U.S. at 322.

[10] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[11] *Id.* (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

additional forty-five (45) days,"[12] and the second bulletin "suspend[ed] all claims reporting deadlines for the duration of the emergency declaration and extend[ed] *all policyholder rights or benefits related to deadlines* until 90 days after the state of emergency ends.'"[13] The final bulletin later rescinded the first and second bulletins, except that "[t]he term of extended grace periods [for nonpayment of premiums] . . . [and] [t]he term of extended claims reporting periods, afforded to insureds pursuant to the original bulletin, [were] allowed to expire upon reaching the end of the extension."[14]   This is not a case involving either the nonpayment of premiums or the claims-reporting period. And even assuming the phrase "all policyholder rights or benefits related to deadlines" included the parties' contractually set limitations period, the third bulletin rescinded that extension as of June 2020.   The Court thus concludes that Plaintiff "cannot rely upon the subject bulletins to support an extension of the limitations period."[15]

   II.   *The limitations clause governs Plaintiff's breach-of-contract claim but not its bad-faith tort claim.*

   Because subject-matter jurisdiction for this action is based upon diversity of citizenship, the issues before the Court require consideration of Oklahoma law as well as

---

[12] Def.'s Mot. (Dkt. 24), Ex. 4.

[13] *Id.* at Ex. 5 (emphasis added).

[14] *Id.* at Ex. 6.

[15] *See Mireles v. Liberty Ins. Corp.*, No. CIV-21-843-F, 2023 WL 349010, at *2 (W.D. Okla. Jan. 20, 2023), *reconsidered on other grounds*, No. CIV-21-843-F, 2023 WL 2432025 (W.D. Okla. Mar. 9, 2023).

the insurance policy's language.[16] Under Oklahoma law, interpretation of an insurance policy, like any written contract, presents a question of law.[17] The contract "should be construed according to the terms set out within the four corners of the document."[18] If the contract's terms are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties."[19] And though ambiguities should be "construed against the insurer," courts "should not create an ambiguity in the policy by 'using a forced or strained construction by taking a provision out of context, or by narrowly focusing on a provision.'"[20]

The insurance contract's two-year limitations period unambiguously covers Plaintiff's breach-of-contract claim. The provision's relevant portion provides that "[n]o [o]ne may bring a legal action against [Defendant] *under this Coverage part* unless . . . [t]he action is brought within 2 years after the damage on which the direct physical loss occurred."[21] And it is undisputed that Plaintiff filed suit against Defendant more than two years after the alleged property damage.[22] Because Plaintiff failed to file suit within two

---

[16] *State Farm Fire and Casualty Co. v. Pettigrew*, 180 F. Supp. 3d 925, 931 (N.D. Okla. 2016) ("The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state.") (quoting *Houston Gen. Ins. Co. v. Am. Fence Co., Inc.*, 115 F.3d 805, 806 (10th Cir. 1997)).

[17] *May v. Mid-Century Ins. Co.*, 151 P.3d 132, 140 (Okla. 2006) (footnotes omitted).

[18] *Pettigrew*, 180 F. Supp. 3d at 931 (citing *First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166, 1173 (10th Cir.2005)).

[19] *Id.* (quoting *Roads West, Inc. v. Austin*, 91 P.3d 81, 88 (Okla. Civ. App. 2003)).

[20] *Id.* at 932 (quoting *Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 575 (Okla. 1998)).

[21] Def.'s Mot. (Dkt. 24), Ex. 1, at 19 (emphasis added).

[22] Def.'s Mot. (Dkt. 24), at 6; Pl.'s Resp. (Dkt. 25), at 6.

years, and because the Insurance Commissioner's bulletins did not extend this deadline, Plaintiff's breach-of-contract claim is barred by the parties' contractually set limitations period.[23] The Court thus grants summary judgment against Plaintiff on its breach-of-contract claim.

Though Plaintiff's breach-of-contract claim falls within the limitation clause's scope, its bad-faith tort claim does not. Defendant argues that the phrase "[n]o [o]ne may bring *a legal action* against [Defendant] under this Coverage part" is broad enough to cover both the breach-of-contract-claim and the bad-faith tort claim. Further, says Defendant, the next phrase requires actions to be "brought within 2 years after the damage on which the direct physical loss occurred," which mirrors the statutory language in Okla. Stat. tit. 36, § 3617. Section 3617 requires property-insurance policies to provide at least a one-year limitations period for bringing "an action," with the clock starting on "the date of occurrence of the event resulting in loss." According to Defendant, because § 3617 isn't expressly limited to breach-of-contract claims, and because it is tied to the "occurrence of the event resulting in loss," the Court should construe the parties' two-year limitations period coextensively with the statute. Otherwise, "the Court would have [to] rewrite § 3617 to limit the applicable deadline to a contract claim."[24]

Though § 3617 provides the floor for limitation periods in property-insurance contracts, its language doesn't control the reading of the parties' insurance contract. To

---

[23] This limitations period exceeds the one-year statutory floor for property-insurance policies. *See* Okla. Stat. tit. 36, § 3617.

[24] Def.'s Mot. (Dkt. 24), at 12.

start, the parties' contract contains narrower wording: "[n]o [o]ne may bring a legal action against [Defendant] *under this Coverage part*."[25] This language specifies the types of legal actions subject to the two-year limitations period: claims brought under the applicable coverage provisions, i.e., contract claims. And second, as Plaintiff notes in its response, Oklahoma law distinguishes between contract claims and bad-faith claims. The latter claims are torts, and "[a]lthough torts may be committed by parties to a contract, a tort is a violation of a duty imposed by law *independent of contract*."[26] Defendant asserts, however, that "a bad faith claim certainly is an action 'under th[e] Coverage part' of the insurance policy since, without coverage, no bad faith claim can even exist to begin with."[27] True enough, a bad-faith claim depends in part on the existence of an insurance contract. But "[i]f the contract is merely the inducement which creates the occasion for the tort, the tort,

---

[25] Def.'s Mot. (Dkt. 24), Ex. 1, at 19 (emphasis added).

[26] *Lewis v. Farmers Ins. Co.*, 681 P.2d 67, 69 (Okla. 1983) (emphasis added). Defendant faults Plaintiff for relying on *Lewis*, arguing that the case involved the statute for limitations periods in *fire-insurance* policies, Okla. Stat. 36, § 4803(G). Indeed, § 4803(G) contains narrower language than § 3617, providing that "[n]o suit or action *on this policy* for the recovery of any *claim* shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss." *See* Okla. Stat. 36, § 4803(G) (emphasis added). But the Oklahoma Supreme Court's decision turned on the distinction between claims brought under a contract and those based on breaches of an independent duty; there was no discussion of the phrase "on this policy for the recovery of any claim." *See Lewis*, 681 P.2d at 69 ("[T]his Court clearly recognize[s] the two causes of action which may be asserted premised on the existence of an insurance contract: an action based on the contract; and an action for breach of the implied duty to deal fairly and in good faith.").

[27] Def.'s Reply (Dkt. 26), at 3.

not the contract, is the basis of the action."[28] The Court thus finds that the parties' two-year limitations period doesn't apply to Plaintiff's bad-faith tort claim.

In contrast to Plaintiff's breach-of-contract claim, its bad-faith claim was filed within the applicable statute of limitations. A bad-faith tort claim "must be brought within two years 'after the cause of action shall have accrued,'" and an action accrues "when a litigant first could have maintained his action to a successful conclusion."[29] It is undisputed that Defendant denied Plaintiff's claim on June 5, 2020, and that Plaintiff filed this action on August 2, 2021. And Defendant agrees that "to the extent Plaintiff has a cognizable bad faith claim . . . , Plaintiff knew or should have known about the possibility of it by June 2020" when Defendant denied the claim.[30] Because Plaintiff filed this action within two years of the alleged bad-faith denial, the claim is not barred by the applicable statute of limitations.[31]

---

[28] *Lewis*, 681 P.2d at 69. *Cf. Gray v. Holman*, 909 P.2d 776, 780 (Okla. 1995) (citing *Lewis* and concluding that a bad-faith claim was not contractually time-barred because "our jurisprudence affords a two-year limitation for a tort action based on bad-faith refusal to settle a claim").

[29] *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 746 (Okla. 2021) (quoting Okla. Stat. tit. 12, § 95(A)(3), and citing *Lewis*, 681 P.2d at 70).

[30] Def.'s Reply (Dkt. 26), at 5.

[31] A plaintiff "can pursue a bad faith claim . . . even though his breach of contract claim is time-barred." *Hayes v. State Farm Fire & Cas. Co.*, 855 F. Supp. 2d 1291, 1301 (W.D. Okla. 2012) (citing *McCarty v. First of Georgia Ins. Co.*, 713 F.2d 609, 612 (10th Cir. 1983) ("In short, the prior dismissal of the contractual claim on the statute of limitations ground does not trench upon the merit of the instant tort action. The breach of fair dealing claim is cognizable if appellants can prove that they were entitled to payment on the underlying insurance claim.")). *Accord Roemer v. State Farm Fire & Cas. Co.*, No. 06-CV-0663-CVE-PJC, 2007 WL 527863, at *5 (N.D. Okla. Feb. 14, 2007) ("The Tenth Circuit has held that a plaintiff could proceed with a bad faith claim after his breach of contract claim was dismissed.") (citing *McCarty*, 713 F.2d at 611–12). And "for a bad faith

*Conclusion*

For the reasons given above, Defendant's Motion for Summary Judgment (Dkt. 24) is **GRANTED** in part and **DENIED** in part. Plaintiff's breach-of-contract claim is time-barred because it was not filed within the two-year limitations period contained in the parties' insurance policy. The bad-faith tort claim, however, is timely because it was filed within the applicable statute of limitations.

**IT IS SO ORDERED** this 24th day of May 2023.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

claim to be cognizable, the court must consider the validity of [a] plaintiff's contract claim." *Id.* (internal quotations and citation omitted).